**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERVICE EMPLOYEES PENSION FUND OF UPSTATE NEW YORK, by Terrence Gorman, John Murray, Mark Curletta, Ruth Heller, Scott Phillipson, and Maureen Tomlinson as Trustees and Fiduciaries,<br><br>                                        Plaintiffs,<br>-against-<br><br>BLOSSOM NORTH, LLC<br>d/b/a Blossom North Nursing Home<br>and Rehabilitation Center<br>1335 Portland Ave.<br>Rochester, New York 14621,<br><br>                              and<br><br>WILLIAM MADDEN,<br>STEVE O'NEIL, and<br>GERALD WOOD, Individually<br>1335 Portland Ave.<br>Rochester, New York 14621<br><br>                                        Defendants. | **COMPLAINT**<br><br>5:18-cv-1429 (BKS/TWD)<br><br><br><br><br><br><br><br>Civil Action No.<br>_____ |

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the Defendants, respectfully allege as follows:

## I. JURISDICTION AND VENUE

1.      This is an action arising under the Employee Retirement Income Security Act of 1974, as amended [hereinafter "ERISA"] [29 U.S.C. §1001 *et seq*]. It is an action by the fiduciaries of the employee benefit pension plan for monetary and injunctive relief to redress violations of ERISA Sections 404, 406, 515, and 502(g)(2) [29 U.S.C. §1104, 1106, 1132(g)(2) and §1145].

2.      Jurisdiction is conferred on this Court by ERISA Section 502(a), (e), and (g)(2) [29 U.S.C. §1132(a), (e), and (g)(2)], without respect to the amount in controversy or the citizenship of the parties, as provided in ERISA Section 502(f) [29 U.S.C. § 1132(f)].

3.      Venue is established in this Court by ERISA Section 502(e)(2) [29 U.S.C. §1132(e)(2)]. It is an action brought in the judicial district where the multiemployer pension plan is administered and where the breach took place.

4.      This is also an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended [hereinafter "LMRA"] [29 U.S.C. §185(a)]. It is a suit for, among other things, violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the LMRA [29 U.S.C. §141 *et seq.*].

5.      Jurisdiction is also conferred on this Court, without respect to the amount in controversy, pursuant to LMRA Section 301(a) [29 U.S.C. §185(a)], and pursuant to the laws of the United States of America [28 U.S.C. §1337].

## II. DESCRIPTION OF THE PARTIES

6.      Plaintiffs Terrence Gorman, John Murray, Mark Curletta, Ruth Heller, Scott Phillipson, and Maureen Tomlinson are Trustees of the Service Employees Pension Fund of Upstate New York [hereinafter "Plan" or "Fund"]. Terrence Gorman, John Murray, Mark Curletta, Ruth Heller, Scott Phillipson, and Maureen Tomlinson are fiduciaries of the Fund as defined in ERISA Section 3(21)(A) [29 U.S.C. §1002(21)(A)].

7.      The Plan, established pursuant to various collective bargaining agreements, is a multiemployer plan, as defined in ERISA Sections 3(3) and (37)(A) [29 U.S.C. §§1002(3), (37)(A)], and is an employee benefit pension plan, as defined in ERISA Section 3(2) [29 U.S.C. §1002(2)]. The Plan is administered within the Northern District of New York at 731 James Street, Suite 300, Syracuse, New York 13203.

8. Upon information and belief, Defendant Blossom North, LLC d/b/a Blossom North Nursing Home and Rehabilitation Center [hereinafter "Corporation"] is a domestic corporation incorporated under the laws of the State of New York, having its principal place of business and offices located at 1335 Portland Ave., Rochester, New York 14621.

9. Upon information and belief, Defendants William Madden, Steve O'Neil, and Gerald Wood are the owners and/or operators of the Corporation, having their principal places of business and offices located at 1335 Portland Ave., Rochester, New York 14621.

10. Defendants are employers in an industry affecting commerce, all as defined in ERISA Sections 3(5), (11) and (12) [29 U.S.C. §1002(5), (11) and (12)]. Defendants are also employers of employees covered by multiemployer plans maintained pursuant to collective bargaining agreements, and they are obligated to make contributions to the Fund in accordance with ERISA Section 515 [29 U.S.C. §§1145].

11. The Defendants are an employer in an industry affecting commerce within the meaning of the LMRA Section 301(a) [29 U.S.C. §185(a)].

### III. FIRST CAUSE OF ACTION

12. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "11" inclusive of this Complaint as if set forth fully at this point.

13. ERISA Section 515 [29 U.S.C. §1145] provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

14. At all times relevant herein, Defendant Corporation is party to collective bargaining agreements with 1199SEIU United Healthcare Workers East ["Agreements"].

15. Pursuant to the Agreements, Defendant Corporation is bound by the terms, conditions, rules, and regulations of the Restated Agreement and Declaration of Trust of the Service Employees Pension Fund of Upstate New York and the Collections Policy of the Service Employees Pension Fund of Upstate New York [hereinafter "Trust" and "Collections Policy"].

16. The Agreements and Trust obligate Defendant Corporation to remit pension plan contributions to the Fund.

17. In addition to the above and pursuant to the Agreements, the Trust, and the Collections Policy together with ERISA Section 502(g)(2) [29 U.S.C. §1132(g)(2)], in the event the Defendant Corporation fails to timely remit contributions, it becomes liable not only for the amount of contributions due but also for the following: (1) interest on the unpaid contributions calculated at the rate of twenty-four percent (24%) per annum; (2) the greater of interest on the delinquent contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) the costs and fees of collection, including auditing fees, attorneys' fees, paralegal fees, and costs.

18. The Agreements, Trust, and Collections Policy obligate the Defendant Corporation to remit the contributions on or before the sixtieth (60th) day following the end of the month during which the hours, for which contributions are required, are worked by the employees.

19. Defendant Corporation has failed and refused, and it continues to fail and refuse, to submit the contributions owed to the Fund for work in covered employment during the period on and after June 1, 2018.

20. Defendant Corporation has not submitted reports to the Fund necessary to determine the hours worked in covered employment on and after June 1, 2018.

21. According to the Fund's estimates, Defendant Corporation has failed to remit $25,182.73 in contributions related to hours worked by the covered employees during the period June 1, 2018 through August 31, 2018, plus the applicable interest, liquidated damages, attorneys' fees, audit fees, and costs.

22. Defendant Corporation, therefore, owes the Fund, in addition to the other amounts described above, contributions for the period June 1, 2018 through August 31, 2018 in the amount of $25,182.73, plus the following: (1) interest on the unpaid contributions at the rate of twenty-four percent (24%) per annum; (2) the greater of interest on the unpaid contributions or liquidated damages; and (3) the costs and fees of collection, including auditing fees, attorneys' fees, paralegal fees, and costs.

## IV. SECOND CAUSE OF ACTION

23. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "22" inclusive of this Complaint as if set forth fully at this point.

24. On or about November 2, 2017, the Fund and the Defendants entered into a Settlement Agreement related to litigation before this District Court with the following docket number: Civil Action No.: 5:17-cv-00518 (FJS/ATB) [hereinafter "Settlement Agreement"]. A copy of the Settlement Agreement is attached hereto as Appendix "A."

25. Section 4 of the Settlement Agreement provides for the suspension of $22,010.99 in liquidated damages as well as the portion of the attorneys' fees and costs incurred by the Fund on and after September 1, 2017 to discourage the Corporation from failing to remit timely the contributions owed to the Fund through November 3, 2020.

26. Defendant Corporation has violated the Settlement Agreement by failing to remit the contributions related to work in covered employment on and after June 1, 2018.

27. Defendant Corporation, therefore, owes the Fund $22,010.99 in liquidated damages as well as the portion of the attorneys' fees and costs incurred by the Fund on and after September 1, 2017 to enforce the Settlement Agreement.

## V. THIRD CAUSE OF ACTION

28. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "27" inclusive of this Complaint as if set forth fully at this point.

29. ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" [29 U.S.C. §1104(a)(1)(A)].

30. ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law [29 U.S.C. §1104(a)(1)(D)].

31. The Trust provides in pertinent part that title to all monies paid into and/or due and owing to the Fund vests in and remains exclusively in the Trustees of the Fund, so outstanding and withheld contributions constitute plan assets.

32. As a result of the work performed by the Corporation under the Agreements, Defendants, upon information and belief, received substantial sums of money related to operating a nursing home intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

33. Defendants were fiduciaries with respect to the plan assets that they failed to timely remit to the Fund.

34. Upon information and belief, Defendants William Madden, Steve O'Neil, and/or Gerald Wood owned, controlled, and dominated the affairs of Defendant Corporation, they purportedly acted on behalf of and in the interest of the Corporation, and they carried on the business of the Defendant Corporation for their own personal ends.

35. Upon information and belief, Defendants William Madden, Steve O'Neil, and/or Gerald Wood withheld, permitted the withholding of, or authorized the withholding of contributions to the Fund, and Defendants William Madden, Steve O'Neil, and/or Gerald Wood dealt with plan assets for their own personal use and benefit although the plan assets rightfully belonged to the Fund.

36. Upon information and belief, Defendants William Madden, Steve O'Neil, and/or Gerald Wood had managerial discretion and control over Defendant Corporation, made all decisions on behalf of the Defendant Corporation, signed contracts governing the Defendant Corporation, acted on behalf of and in the interest of Defendant Corporation, and made all decisions concerning payments by the Defendant Corporation.

37. Upon information and belief, Defendants William Madden, Steve O'Neil, and/or Gerald Wood determined which creditors Defendant Corporation would pay, determined when the Defendant Corporation would pay the Fund, determined how much money would be paid to the Fund, determined which employees of the Defendant Corporation would be reported to the Fund, and exercised control over money due and owing to the Fund.

38. Upon information and belief, Defendants William Madden, Steve O'Neil, and/or Gerald Wood commingled or permitted the commingling of assets of the Fund with the Defendant Corporation general assets and used the Fund's assets to pay other creditors of Defendant Corporation rather than forwarding the assets to the Fund.

39. Upon information and belief, while retaining Plaintiffs' contributions, Defendants William Madden, Steve O'Neil, and/or Gerald Wood transferred, applied, or diverted, or permitted the transfer, application, use, or diversion of, the Fund's assets for purposes other than the Fund without first making payment to Fund.

40. The transfer of the assets to persons other than the Fund described in this Complaint occurred, and/or the use of the assets for purposes other than those permitted by the Plaintiff Fund occurred, with the knowledge and/or at the direction of, Defendants William Madden, Steve O'Neil, and/or Gerald Wood.

41. By withholding the contributions from the Fund, Defendants William Madden, Steve O'Neil, and/or Gerald Wood received and retained for their own personal use and benefit, monies which were rightfully assets of the Fund in violation of ERISA Section 404(a)(1)(A) [29 U.S.C. §1104(a)(1)(A)].

42. By withholding the contributions from the Fund, Defendants William Madden, Steve O'Neil, and/or Gerald Wood failed to abide by the documents and instruments governing the Fund in violation of ERISA Section 404(a)(1)(D) [29 U.S.C. §1104(a)(1)(D)].

43. To the extent Defendants William Madden, Steve O'Neil, and/or Gerald Wood acting in their capacity as corporate officer, director, and/or shareholder, abused the position as fiduciary by permitting, directing, or instigating this transfer, application, or diversion in a manner contrary to their fiduciary obligations and these actions are a breach of trust under ERISA [29 U.S.C. §§1104, 1106, and 1109].

44. By reason of the wrongful diversion and/or conversion of the Fund's assets, the Fund has not been paid monies rightfully due to it.

45. As a result of the breaches of fiduciary duty described above, Defendants William Madden, Steve O'Neil, and/or Gerald Wood are liable to the Fund (i) for the fringe benefit contributions due and owing to the Fund; plus (ii) for the interest at the consolidated rate of return of the Fund's investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore to the Fund any profits that Defendants made through use and retention of the assets of the Fund.

## VI. FOURTH CAUSE OF ACTION

46. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "45" inclusive of this Complaint as if fully set forth herein.

47. Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit [29 U.S.C. §1106(a)(1)(A) and (B)]. Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account [29 U.S.C. §1106(b)(1)-(3)].

48. At all times relevant herein, Defendants were parties in interest with respect to the Fund because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A), (C) and (E) [29 U.S.C. §1002(14)(A), (C), and (E)].

49. To the extent that Defendants William Madden, Steve O'Neil, and/or Gerald Wood withheld, permitted the withholding of, or authorized the withholding of the contributions from the Fund, Defendants William Madden, Steve O'Neil, and/or Gerald Wood have dealt with the plan assets in their own interest and/or exchanged property or extended credit from plan assets for their own personal use and benefited in violation of ERISA Section 406 [29 U.S.C. §1106], and they have received and retained from the Fund for, upon information and belief, their own personal

use and benefit, monies which are rightfully assets of the Fund.

50. To the extent that Defendants William Madden, Steve O'Neil, and/or Gerald Wood have withheld, received, and retained the contributions, or allowed the withholding and retention of contributions, Defendants William Madden, Steve O'Neil, and/or Gerald Wood, as a party in interest, have impermissibly used the assets of the Fund in contravention of ERISA Section 406 [29 U.S.C. §1106], the interests of the Fund and the interests of the Fund's fiduciaries, participants, and beneficiaries.

51. As a result of the breaches of fiduciary duty described above, Defendants William Madden, Steve O'Neil, and/or Gerald Wood are liable to the Fund (i) for the fringe benefit contributions due and owing to the Fund; plus (ii) for the interest at the consolidated rate of return of the Fund's investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore to the Fund any profits that Defendants made through use and retention of the assets of the Fund.

## VII. FIFTH CAUSE OF ACTION

52. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "51" inclusive of this Complaint as if set forth fully at this point.

53. If this Court does not enjoin Defendants from further violations of ERISA, LMRA, the Agreements, the Trust, and the Collections Policy, Plaintiff Fund will be further damaged as a result thereof in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

54. Defendant Corporation has failed to comply with its obligations to the Plaintiff Fund, despite due demand for compliance, and unless this Court enjoins Defendant Corporation from violating ERISA, LMRA, the Agreements, the Trust, and the Collections Policy, Defendant

{B0076023.1}                                          10

Corporation will continue to fail to timely remit contributions and monthly remittance reports described above, causing Plaintiff Fund and the beneficiaries of the Fund to incur additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Fund and endangering the payment of promised benefits from the Fund to qualified beneficiaries.

55. Defendant Corporation's failure to comply with its obligations to the Fund has reduced the corpus and income of the Fund thereby jeopardizing the stability and soundness of the Fund as well as the ability to pay benefits.

56. Defendant Corporation's failure to comply with its obligations to the Fund may cause sufficient instability to the Fund's financial affairs such that participant benefits may be reduced or terminated.

57. Because Defendant Corporation continues to fail to comply with its obligations to the Fund, new delinquencies are now being created monthly, again depriving the Fund of adequate monies to pay promised benefits which in turn could cause the foregoing irreparable harm to be intensified in magnitude.

58. Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

59. Unless this Court enjoins Defendant Corporation from breaching ERISA, LMRA, the Agreements, Trusts, and Collections Policy and unless Defendant Corporation is compelled to remit all monies and reports that become due or are determined to be due to Plaintiffs whether arising before or after commencement of the action, greater injury will be inflicted upon the Fund, their Trustees, participants and beneficiaries, by denial of relief than could possibly be inflicted upon Defendant by granting such relief.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Trustees on behalf of the Fund demand judgment against Defendants Blossom North, LLC d/b/a Blossom North Nursing Home and Rehabilitation Center, William Madden, Steve O'Neil, and/or Gerald Wood as follows:

1. On Plaintiffs' First Causes of Action, judgment against the Defendant Corporation for $25,182.73, plus the following: (1) the amount of the contributions due for hours worked in covered employment on and after September 1, 2018; and (2) interest on the unpaid contributions at the rate of twenty-four percent (24%) per annum; and (3) the greater of interest on the unpaid contributions or liquidated damages; and (3) the costs and fees of collection, including auditing fees, attorneys' fees, paralegal fees, and costs.

2. On Plaintiffs' Second Causes of Action, judgment against the Defendant Corporation for $22,010.99 in liquidated damages as well as the portion of the attorneys' fees and costs incurred by the Fund on and after September 1, 2017 as provided by the Settlement Agreement attached hereto as Appendix "A."

3. On Plaintiffs' Third and Fourth Causes of Action, judgment against Defendants William Madden, Steve O'Neil, and/or Gerald Wood (i) for the fringe benefit contributions due and owing to the Fund; plus (ii) for the interest at the consolidated rate of return of the Fund's investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore to the Fund any profits that Defendants made through use and retention of the assets of these Funds.

4. On Plaintiffs' Fifth Cause of Action, judgment against the Defendants as follows:

   (i) Judgment for any and all additional contributions that become due following commencement of the action or are determined to be due whether arising before or after commencement of the action, plus the applicable interest and liquidated damages as set forth herein;

      (ii)    A permanent injunction preventing and restraining the Defendant from breaching the Agreements, the Declaration of Trust, and the Collections Policy by which it is bound; and

      (iii)    A permanent injunction directing the Defendant to perform and continue to perform its obligations to the Plaintiffs, specifically, directing it to timely furnish the required monthly remittance reports and payments to Plaintiffs, and to provide the Plaintiffs, upon demand and at Defendant's expense, access to its books and records for an audit and examination relating to the employment of its employees, including but not limited to weekly payroll reports, payroll journals and quarterly employer reports for various federal and state agencies.

5.    Such further relief as the Court deems just and proper.

DATED: December 6, 2018

**BLITMAN & KING LLP**

By: *[signature]*

Daniel Kornfeld, of Counsel
Bar Roll Number: 512429
Attorneys for Plaintiffs
Office and Post Office Address
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
Telephone: (315) 422-7111
Facsimile: (315) 471-2623
e-mail: dekornfeld@bklawyers.com

# APPENDIX "A"

## SETTLEMENT AGREEMENT

**WHEREAS**, on or about May 11, 2017, SERVICE EMPLOYEES PENSION FUND OF UPSTATE NEW YORK, by Terrence Gorman, John Murray, Mark Curletta, Ruth Heller, Scott Phillipson, and Maureen Tomlinson as Trustees and Fiduciaries, (hereinafter "The Fund") commenced an action known as "*SERVICE EMPLOYEES PENSION FUND OF UPSTATE NEW YORK by Terrence Gorman, John Murray, Mark Curletta, Ruth Heller, Scott Phillipson, and Maureen Tomlinson as Trustees and Fiduciaries v. Blossom North, LLC d/b/a Blossom North Nursing Home and Rehabilitation Center*", Northern District of New York Civil Action No. 5:17-cv-00518 (FJS/ATB) ("The Action"), and

**WHEREAS** Defendant Blossom North, LLC ("Blossom North") answered and appeared in the action, and

**WHEREAS** by and through The Action, The Fund sought payment and recovery of certain pension fund contributions, interest, liquidated damages, attorneys' fees, and costs related to hours worked in covered employment by relevant employees of Blossom North during the period October 1, 2016 through June 30, 2017 pursuant to Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1132(g)(2), 1145, and Section 301(a) of the Labor Management Relations Action of 1947 ("LMRA"), 29 U.S.C. §185(a), and the terms of a Collective Bargaining Agreement between the parties; and

**WHEREAS**, the parties engaged in Mandatory Mediation as required by the Northern District of New York, and

**WHEREAS** the parties reached a settlement of the claims and causes of action set forth in the Complaint [NDNY Case Docket Item No. 1], and seek now to document and implement the terms of said settlement,

**NOW**, the undersigned, as designated and authorized representatives of each of the respective parties, stipulate and agree as follows:

1) Blossom North shall pay to the Service Employees Pension Fund of Upstate New York ("Fund") on or before November 3, 2017, the sum of $88,499.47, a sum that satisfies (a) The Fund's claim to $71,675.73 in Fund contributions related to work in covered employment during the period October 1, 2016 through June 30, 2017; (b) The Fund's claim to $6,044.66 in interest accrued on said Fund contributions; and (c) The

Fund's claim to $10,779.08 in attorneys' fees and costs incurred by The Fund in relation to The Action through August 31, 2017, subject to the following.

2) The Fund reserves all rights to audit the books and records of Blossom North as provided for in the Collective Bargaining Agreement between Blossom North Nursing and Rehabilitation and 1199 Service Employees International Union United Healthcare Workers East, dated May 1, 2014 ("The Collective Bargaining Agreement"), in any subsequent Collective Bargaining Agreement between the parties, and in the Collections Policy in effect on January 1, 2015. To the extent any subsequent audit uncovers an inaccuracy in the books and records upon which the $71,675.73 amount is based, either party may pursue further action as appropriate to recover underpayment or overpayment of contributions. The parties agree that this settlement is without prejudice to Plaintiffs right to file a new action against Blossom North in the event Plaintiffs discover other delinquent contribution amounts owed by Blossom North during the time period alleged in the Complaint, and not known to the Fund at this time; the parties acknowledge that in the event the Fund commences a new action under such circumstances in the future, Blossom North shall have full offset and credit for amounts paid through this settlement.

3) Upon payment of the $88,499.47 sum, the parties shall file a Stipulation of Dismissal of The Action with the District Court, the filing of which shall be deemed to release Blossom North as to the items deemed satisfied in paragraph (1), and shall dismiss this case with prejudice consistent with the requirements of Rule 41(a)(1) of the Federal Rules of Civil Procedure and to the extent permitted by the terms of this settlement agreement.

4) The parties agree that, as part of this settlement, the Fund shall suspend collection of the $22,010.99 in liquidated damages as well as the portion of the attorneys' fees and costs incurred by the Fund for this case on and after September 1, 2017. For purposes of this Settlement Agreement, the phrase "the Fund shall suspend collection" means that if, on or before November 3, 2020, Blossom fails to remit timely contributions to the Fund for work in covered employment on and after July 1, 2017, the Fund shall include within any new action the recovery of the suspended amounts of $22,010.99 in liquidated damages as well as the attorneys' fees and costs incurred by the Fund for this

case on and after September 1, 2017. If, as of November 3, 2020, Blossom has timely remitted contributions to the Fund for work in covered employment on and after July 1, 2017, the Fund shall not seek to collect the liquidated damages, attorneys' fees, and costs described in this Section.

5) The Fund agrees and acknowledges that in consideration for the making of this settlement, the Fund shall not claim in this or other proceedings, if any, that the members, officers, and directors of Blossom North are liable in their respective individual capacities for the contributions, interest, liquidated damages, and related amounts owed to the Fund concerning work in covered employment during the period October 1, 2016 through June 30, 2017.

6) The parties acknowledge that each signatory has had the opportunity to review the terms of this Agreement and consult with legal counsel regarding the same, and has authority to execute the Agreement on behalf of the party. The parties acknowledge that the Agreement will be effective as of the date of execution by the representatives of the parties.

7) This Agreement may be signed in counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument. Delivery of an executed counterpart of a signature page to this Stipulation by telecopier or electronic transmission (including in "PDF" or similar format) shall be effective and deemed as delivery of a manually executed original signature page hereto.

8) This Agreement is entered into in the State of New York, and shall be construed and interpreted in accordance with the laws of the State of New York, except as may be preempted by ERISA.

9) This Agreement is binding on the parties hereto, their heirs, administrators, executors, successors and assigns.

SERVICE EMPLOYEES PENSION FUND
OF UPSTATE NEW YORK

By: _____Beth Barrett_____
Beth Barrett,
Administrator

**BLOSSOM NORTH, LLC ("Blossom North")**

By: _/s/ William Madden_
William Madden, Member

By:_____
Steve O'Neil, Member

By:_____
Gerald Wood, Member

**BLOSSOM NORTH, LLC ("Blossom North")**

By: _____
William Madden, Member

By: _____
Steve O'Neil, Member

By: _____
Gerald Wood, Member

**BLOSSOM NORTH, LLC ("Blossom North")**

By: _____
    William Madden, Member

By: _____
    Steve O'Neil, Member

By: _*[signature]*_____
    Gerald Wood, Member